**White Law Offices, PLLC**

**Wendy F. White, AzSBN 011352**
1080 Mountainaire Rd.
Flagstaff, AZ 86005
(928) 525-9255
Email: cjcc@infomagic.net
Attorney for Denise Elaine Shay Downum, Creditor/Co-Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>CHRISTIAN ERIC DOWNUM,<br><br>Debtor. | Chapter 13<br><br>Case No.: 3:13-bk-16930-RJH |
| DENISE E.S. DOWNUM,<br><br>               Movant<br><br>v.<br><br>CHRISTIAN DOWNUM,<br><br>               Respondent. | MOTION FOR RELIEF FROM AUTOMATIC STAY |

DENISE ELAINE SHAY DOWNUM (Wife), by counsel, moves this Court for Relief from the automatic stay issued upon the filing of Petitioner's Voluntary Petition pursuant to 11 USC §362 and Rule 4001, Federal Rules of Bankruptcy Procedure on the following grounds.

### I. PROCEDURAL BACKGROUND

Debtor, Christian Eric Downum (Husband), filed a Petition for Dissolution in the Superior Court of the State of Arizona, County of Coconino on January 3, 2013, Case number DO 2013-00006. Denise Downum is the debtor's spouse. The parties have one minor child residing with Wife and one child who turned 18 in May 2013, also residing with

Wife. Debtor moved from the family residence in August of 2012 and has resided in a separate apartment ever since.

The state divorce proceeding is contentious. On May 21, 2013, the State Court issued Temporary Orders for child support, spousal maintenance, and temporarily allocated the community debt of the parties with the majority of the unsecured credit card debt to Husband/Debtor and the secured mortgages on the primary residence to Wife. The Court granted Wife exclusive use of the residence. A redacted copy of the Temporary Orders is attached as Exhibit A and B.

The divorce is still pending. Because Debtor has filed this bankruptcy proceeding, the trial court has set the matter for trial on the issues of child support, spousal maintenance and custody only. The trial is scheduled for January 16 and 17, 2014. The issues of property division and debt have been bifurcated with no date set for trial.

The parties have been married for 25 years and the majority of the assets listed in Debtor's Schedules are community property under Arizona State Law. Some of the assets listed are however the sole and separate property of Wife and some are sole and separate property of Husband. Debtor husband disputes wife's characterization of certain property as her sole and separate properly.

In his Schedule B Debtor has listed in the aggregate "Other collections" which he has valued at $40,000 and a "Military collection" which he has listed with an "Unknown" value. The majority of the military collection is community property and was one of the more hotly contested issues in the divorce proceeding. In State Court, Husband has testified that the "military collection" is worth $100,000.

In addition to property, there are issues regarding debt. The parties have seven unsecured credit cards. Debtor was ordered to make monthly payments on five of those cards in the Temporary order issued on May 21, while Wife was ordered to make payments on two of the cards. (Exhibit B) Debtor has only listed five of the seven credit cards in his bankruptcy schedules despite the fact that all of the cards are community debt. He has listed a debt to his divorce attorney in his schedules but has failed to acknowledge it as his sole and separate debt. Wife disputes that all of the credit card debt is community debt. Some of the credit card debt was incurred by Debtor for his sole benefit, not for the benefit of the community. He has also included a secured debt on a community owned vehicle that is his sole and separate debt.

II.  LAW

The filing of a bankruptcy Petition operates as an automatic stay of various types of proceedings. It does not operate to stay the "commencement or continuation of a civil action or proceeding": "(ii) for the establishment or modification of an order for domestic support obligations;" or "(iv) for the dissolution of a marriage, **except to the extent that such proceeding seeks to determine the division of property that is property of the estate.**"

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

3

(A) *the debtor does not have an equity in such property*; and

(B) *such property is not necessary to an effective reorganization*;"

There is no definition of the term "cause" in the bankruptcy code. *In re Dryja*, 425 B.R. 608 (Bankr.Colo., 2010). Consequently, relief based on a finding of cause "is a discretionary determination made on a case by case basis." *In re Busch,* 294 B.R. 137, 140 (10th Cir. BAP 2003).

## A. For Cause-Pending Divorce Proceeding

Whether to grant relief from the automatic stay is discretionary. *In re Bamman,* 239 B.R. 560 (Bankr. W.D. Mo., 1999) Bankruptcy law does not create property rights. State law governs the inquiry of a debtor' interest in property or rights to property. *In re Haas,* 31 F.3d1081 (11th Cir. 1994) cert den 515 U.S. 1142 (1995). The bankruptcy courts do not have jurisdiction to determine the property rights of divorcing parties and it is appropriate for this Court "to defer 'to the divorce court's greater expertise on the question of what property belongs to whom' under state domestic relations law." *In re Bamman*, 239 B.R. 560 (Bankr. W.D. Mo., 1999); *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property rights are created and defined by State law") , *In re White*, 851 F.2d 170, 173 (6th Cir.1988), *In re Dryja,* 425 B.R. 608 (Bankr.Colo., 2010); *Schulze v. Schulze,* 15 B.R. 106 (Bankr.S.D.Ohio, 1981).(No doubt that divorce proceeding should not be stayed).

Debtor has filed for bankruptcy as an individual. Thus only property that he has a legal or equitable claim to is "property of the estate" and, if it is community property, only to the extent that he has "sole, equal or joint management and control" of such property as of the commencement of the case. 11 USC §541

4

In order for this Court to determine what assets are included in the bankruptcy estate, the State Court must first determine the relative rights of the parties in that property. For example, Debtor has included in the assets of the estate, the parties residential real estate. However, as of the date of filing this case, the State Court had issued temporary orders granting Wife exclusive possession of the residence and Debtor therefore did not have "sole, equal or joint management and control" of that property.   (See Exhibit B, Temporary Orders)

In addition to property rights, the State Court must determine which debts are joint debts and which are sole and separate debts. The test to determine whether that debt is Debtor's sole and separate debt is whether the debt was incurred to benefit the community. _Cardianl & Stachel, PC v. Curtiss_, 225 Ariz. 381, 238 P.3d 649 (Ariz. App., 2010)  Wife's interest in community property cannot be used to pay debts that are the sole and separate responsibility of Debtor. A.R.S. §§25-214 and 25-215. The State Court must determine under State law which of these debts are joint debts and which are sole and separate.

In order for Wife to receive an appropriate amount of spousal maintenance under Arizona state law, the State court is directed to consider the "financial resources of the party seeking maintenance, including marital property apportioned to that spouse" as well as "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common." A.R.S. §25-319(A)(1) and (B) (9, 11). Distribution of both debt and marital property are necessary in order for the State Court to render a fair decision on spousal support.

Furthermore, in order to determine spousal maintenance, the State Court must consider Husband/Debtor's income. In all prior years, since commencing his small business

5

of buying and selling military antiques, Debtor has included the income and expenses from such sale as Schedule C income, not as capital gains. In this bankruptcy proceeding, while claiming that the income from the sales of the military collection will be used to pay down debt, he has suggested to this Court that the income from the sales not be included in his calculation of income, but rather

### B. For Cause-Abuse of Bankruptcy Proceedings

"The Debtor's obvious intent is to use this bankruptcy proceeding, not only as a shield against his creditors, but also as a sword against his wife." _In re Dryja_, 425 B.R. 608 (Bankr.Colo., 2010). In so finding, the _Dryja_ Court also found that granting stay relief was appropriate.

The _Dryja_ case is similar to this one. The Debtor Husband filed for bankruptcy while the divorce was pending. His schedule of assets and debts were incomplete, and dishonest. The Court stated "Undoubtedly this plan is premised on a belief that the Debtor can keep all the assets and leave his non-filing spouse with all the debts." _Id._

In this case it is Debtor's desire to prevent his Wife from receiving any share in what he believes to be "his" Military Collection that has compelled him to file for bankruptcy. By claiming that the value of the collection is unknown, he has attempted to ensure that the property will not be liquidated, either to pay unsecured debtors or to turn over wife's share of the property to her.

Ascribing an "unknown" value to the "military collection" is deceptive and designed to prevent this Court from making a valid analysis under Section 1325. In state court Debtor testified that the value of the military collection is $100,000 if he sells it or $40,000 if it is liquidated. Claiming that the value of the "Other collections" is $40,000 is also deceptive.

6

Many of the items in the "other collections" are the sole and separate property of Wife, not community property. Some of the items are actually the sole and separate property of Debtor. The value of the community property in the "other collections" is likely worth less than $10,000.

Debtor was ordered by the State Court to make at least minimum monthly payments on five of seven credit cards. (See Exhibit B) Instead of making the payments as ordered Debtor filed this bankruptcy action in an attempt to force the sale, under his sole control, of the parties' community property to pay the credit card debt. Debtor is using this Court to thwart the jurisdiction of the State Court, vindictively force Wife to sell property of little monetary value but great sentimental value, maintain sole control over "his" military collection and prevent Wife from obtaining her equitable share of the community property in the divorce proceedings. The bankruptcy process should not be used for such an improper purpose.

### C. Property Not Necessary to Effective Reorganization

Wife seeks relief from stay so that she can obtain her equitable share of the parties' community property. Her share of the community property is not necessary for Debtor's reorganization.

Debtor receives annual income of at least $122,000. He is a tenured professor at Northern Arizona University with significant benefits from his employment. He indicates on his Schedule J that he has $1,224 in disposable monthly income. Yet he proposes to pay only $500 per month toward unsecured debt. Debtor clearly does not want to pay the community credit card debt with his own income; he wants to force the sale of the community property to pay the debt thereby divesting Wife of her equitable share of that

7

property. However, if Debtor were to pay **all** of his disposable income toward the listed unsecured debt over a five year time period, the total paid would be $73,440. His Plan claims only $68,840 in unsecured debt and an additional $14,000 in administrative costs.

Debtor also claims at least $5,000 in sole and separate property from the military collection (Schedule B) which could be applied toward the debt. Wife does not dispute that claim. Thus without taking **any** *community property* into consideration, Debtor has at least $78,440 available to pay the unsecured claims over his 5 year plan period. The total unsecured debt plus administrative costs is only $87,440.

Debtor also has a currently undivided one half interest in the parties' community property. He has testified in State Court that the military collection alone is worth $100,000. He claims in this Court that there is other non-exempt community property worth $40,000 (although Wife contends it is worth less than $10,000). Under State law in a dissolution of marriage both spouses are entitled to an "equitable share" of the community property. (A.R.S.§25-318) While an equitable share is not necessarily exactly 50% of the value, it is likely to be close.

Based on Debtor's statements he would be entitled to an additional $70,000 in community property value in the divorce action if it is allowed to go forward. Even assuming that Wife is correct that the community portion of the "other collections" is only worth $10,000, Debtor's equitable share of the property would be $55,000. His share of the community property plus his available disposable income and his sole and separate property-a total of between $133,440 and $148,440- is more than adequate to pay off all of the unsecured debt as well as all administrative costs. Wife's share of the community property is not necessary to Debtor's reorganization.

Wife submits that Relief from stay so that the State court can determine the property interests of the parties, divide the property and debt, and finalize support will better protect the interests of all creditors, including herself and the parties' minor child, would promote judicial economy and would reduce the costs to the estate and the parties. Once the State court renders its final decisions, it is quite likely that bankruptcy will no longer even be necessary or appropriate. To the extent that it is still appropriate, this Court will have more complete information with which to assess the validity of the Plan. As was done in _In re Haase_, 306 B.R. 415 (B.A.P. 1st Cir., 2004) this Court can limit the relief from stay and provide that the stay will "continue to enjoin the enforcement of the divorce decree until the bankruptcy court [can] review the decree."

III. CONCLUSION

For the reasons cited herein, Wife (Creditor and Co-Debtor) requests that this Court lift the automatic stay for the purpose of allowing her to proceed in the State Court for a determination of the relative rights of the parties in and to the community and sole and separate property and to determine an equitable division of property and debt.

Dated: 12/11/2013

/s/

_____
Wendy F. White, Attorney for
Creditor/Co-Debtor, Denise Downum

9

Copies of the Request for Relief from Automatic Stay have been served on the following by deposit in the United States Mail this December 11, 2013.

**Debtor's Attorney:**
**Aubrey Laine Thomas**
Davis Miles McGuire Gardner, PLLC
320 N. Leroux Street, Suite A
Flagstaff, AZ 86001

**United States Bankruptcy Trustee:**
**Edward J. Maney**
101 N. First Ave., Suite 1775
Phoenix, AZ 85003

Case 3:13-bk-16930-DPC    Doc 23    Filed 12/10/13    Entered 12/10/13 21:25:02    Desc
Main Document    Page 10 of 21

EXHIBIT A

**SUPERIOR COURT OF ARIZONA**
**COCONINO COUNTY**

CHRISTIAN DOWNUM
_____ )
                Petitioner )
and                        )
                           )
                           )
                           )
DENISE DOWNUM              )
_____ )
                Respondent )
                           )

Case No. ___DO 2013-00006___

ATLAS No. _____

**CHILD SUPPORT ORDER**
(TEMPORARY ORDERS)

**THE COURT FINDS that:**

1. _____ (hereafter called 'Father') and _____ (hereafter called 'Mother'), owe a
   duty to support the following child:

   **Name**                          **Date of Birth**
   _____                   _____
   _____                   _____
   _____                   _____
   _____                   _____
   _____                   _____

2. **Child Support Guidelines.** The required financial factors and any discretionary adjustments pursuant to the
   Arizona Child Support Guidelines are as set forth in the Child Support Worksheet, attached and incorporated
   herein by reference.

3. **Child Support.** Father is obligated to pay child support to Mother pursuant to the Arizona Child Support
   Guidelines in the amount of ___ $ 551.18 ___ per month. This amount is an appropriate amount to award for
   child support in this case excepting that the Court finds it more appropriate and just to make a de minimus
   adjustment to the exact Guidelines amount for ease of calculation to ___ $ 550.00 ___ per month.

4. **Support Arrears.** Arrears not addressed.

5. **Past Support.** Reserved, pending trial.

**IT IS ORDERED that:**

1. **Child Support.** Father shall pay child support to Mother in the sum of ___ $ 550.00 ___ per month, payable
   on the 1st day of each month commencing ___ June 1, 2013 ___ by electronic funds transfer.

Case 3:13-bk-16930-DPC   Doc 23   Filed 12/10/13   Entered 12/10/13 21:25:02   Desc
Main Document      Page 12 of 21

2. **Arrearage Judgment.** No additional judgment for child support arrears is entered.

3. **Past Support Judgment.** No judgment for past support is entered. *Reserved, pending trial.*

4. **Total Monthly Payments.** Father shall make total monthly payments to Mother of $550.°° per month payable on the first (1st) day of each month commencing _____June 1, 2013,_____ as follows:

| | |
|---|---|
| Current Child Support payment as ordered above: | $550.00 |
| Child Support Arrearage payments: | |
| Current Spousal Maintenance payment: | |
| Past Due Spousal Maintenance payment: | |
| Clearinghouse handling fee: | |
| **Total Monthly Payment:** | $550.°° |

5. **Clearinghouse.** All payments shall be made through the Support Payment Clearinghouse pursuant to an Order of Assignment signed this date. Any time the full amount of support ordered is not withheld, Father remains responsible for the full monthly amount ordered. Payments not made directly through the Support Payment Clearinghouse shall be considered gifts unless otherwise ordered. All payments shall be made payable to and mailed directly to:

> Support Payment Clearinghouse
> P.O. Box 52107
> Phoenix, AZ 85072-2107

~~Payments must include the Father's name, ATLAS number, and Social Security Number.~~

6. **Current Addresses.** Pursuant to A.R.S. §25-322, the parties shall submit current address information in writing to the Clerk of the Superior Court ~~and the Support Payment Clearinghouse immediately. Father shall submit the names and addresses of Father's employers or other payors within 10 days. The parties shall submit address changes within 10 days of the change.~~

7. **Medical Insurance.** Father shall be individually responsible for providing medical insurance for the minor child, and shall continue to pay premiums for any medical, dental and vision policies covering the child that are currently in existence.

8. **Uninsured Costs.** The costs of medical, dental and vision expenses not paid by insurance shall be shared as follows:

   Father: _____66%_____          Mother: _____34%_____

9. **Travel Costs.** The costs of travel related to parenting time over 100 miles away shall be shared as follows:

   Father: _____66%_____          Mother: _____34%_____

10. **Tax Deductions.** The federal and state tax exemptions for the dependent child are allocated as follows:

| Child's Name | Date of Birth | Parent Entitled To Deduction For Each Calendar Year | | |
|---|---|---|---|---|
| | | 2013 | 2014 | 2015 |
| | | Father | Father | Mother |

Both parents shall cooperate and execute all tax waivers and forms necessary to accomplish this allocation. For any years following those listed above while this Child Support Order remains in effect, the parties shall repeat the above pattern of claiming tax deductions for the child.

Each year, Father may claim any exemptions allocated to him only if he has paid all child support and arrears ordered for the year by December 31 of that year.

11. **Information Exchange.** The parties shall exchange financial information including copies of tax returns, earnings statements, a Parent's Worksheet for Child Support Amount, residential addresses and the names and addresses of their employers every 24 months.

**IMPORTANT INFORMATION:**

12. **Other Orders.** If this is a modification of child support, all other prior orders of this Court not modified remain in full force and effect.

13. **Emancipation.** Generally the obligation to pay child support in the full amount ordered herein continues until the court formally modifies this order with a new order upon request of one of the parties or when the youngest child is emancipated. A child is emancipated:

On the date of the child's marriage.
On the child's 18th birthday and graduation from high school or age 19 (which ever comes first).
When the child is adopted.
When the child dies.



May 21, 2013
Date

Judicial Officer

EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCONINO

Ted S. Reed, Judge
Division 6
Date: May 21, 2013      Tammy M. Ramonett, Judicial Assistant

| | |
|---|---|
| In re the Matter of: | |
| CHRISTIAN ERIC DOWNUM, | Case No. DR 2013-00006 |
| Petitioner, | UNDER ADVISEMENT RULING RE. TEMPORARY ORDERS |
| and | |
| DENISE ELAINE SHAY DOWNUM, | |
| Respondent. | |

This matter has been brought before the Court by Petitioner's Motion for Temporary Orders and Respondent's Response thereto, brought pursuant to Rule 47 of the Arizona Rules of Family Law Procedure. The Court, having reviewed and considered evidence received through the Evidentiary Hearing conducted on May 9th and 21st, 2013, hereby issues the following Temporary Orders pending trial or other resolution in this matter in accordance with Arizona law and Arizona Rules of Family Law Procedure.

Rule 47 of the Arizona Rules of Family Law Procedure provides the procedure by which the Court may issue pre-decree Temporary Orders regarding legal decision-making and parenting time, child support, spousal maintenance, property, debt and attorneys' fees. Pursuant to Rule 47(M), "Temporary [O]rders become ineffective and unenforceable upon termination of an action either by dismissal or following entry of a final decree, judgment, or order, unless that final decree, judgment, or order provides otherwise."

1

A.R.S. § 25-404 authorizes the Court to issue pre-decree Temporary Orders as to legal decision-making and parenting time under the standards set forth by A.R.S. § 25-403. The Court begins from the public policy expressed in A.R.S. §25-103(B)(1) that "absent evidence to the contrary, it is in a child's best interest . . . to have substantial, frequent, meaningful and continuing parenting time with both parents." A.R.S. § 25-403.01 further provides that "[a] parent who is not granted sole or joint legal decision-making is entitled to reasonable parenting time to ensure that the minor child has substantial, frequent, meaningful and continuing contact with the parent unless the court finds, after a hearing, that parenting time would endanger the child's physical, mental, moral or emotional health."

**THE COURT FINDS** that the parties have two children in common,

born May 25, 1996 (age 17), and Brendon Quinam, born July 11, 1998 (age 14).

**THE COURT DOES NOT FIND**, based upon the factors necessary to promote and protect the emotional and physical health of the child, including those set forth in A.R.S. §§ 25-403, 25-403.01, 25-403.02, 25-403.03, 25-403.04 and 25-403.05, that unsupervised parenting time by either Petitioner or Respondent *pendente lite* would endanger the minor children's physical, mental, moral or emotional health.

**THE COURT FURTHER FINDS**, based upon the factors necessary to promote and protect the emotional and physical health of the children, including those set forth in A.R.S. §§ 25-403, 25-403.01, 25-403.02, 25-403.03, 25-403.04 and 25-403.05, that it is in the children's best interests for Respondent to temporarily have sole legal decision-making authority.

**THE COURT FURTHER FINDS**, based upon the factors necessary to promote and protect the emotional and physical health of the children, including those set forth in A.R.S. §§ 25-403, 25-403.01, 25-403.02, 25-403.03, 25-403.04 and 25-403.05, that it is in the children's best interests for both Petitioner and Respondent to have frequent, meaningful and continuing parenting time; and that the parenting plan set forth herein is in the children's best interests.

2

Based upon the Court's findings, **IT IS ORDERED** establishing the following Temporary Orders in this case:

1. Respondent shall have sole legal decision-making authority for the minor children, Ellen Downum, born May 25, 1995 (age 21) and Brendan Downum born July 11, 1998, (age 14), medical, school, police, court and other matters.

2. Respondent shall have physical care of the minor children at all times not allocated to Petitioner herein.

3. Petitioner shall have reasonable parenting time with the minor child Brendan as follows:
   a. Regular Schedule:
      i. Every Tuesday and Wednesday from 4:00 PM to 7:00 PM.
      ii. Saturday, May 25th from 2:00 PM through 7:00 PM.
      iii. Saturday, June 1st from 9:00 AM through 7:00 PM.
      iv. Beginning June 7th, the Second and Fourth weekend of each month from Friday at 4:00 through Sunday at 7:00 PM.
   b. Vacation Schedule:
      i. From July 1st at 9:00 AM through July 12th, when Petitioner's regular parenting time resumes (until July 14th at 7:00 PM).
      ii. From November 27th at 4:00 PM through November 29th at 4:00 PM.
      iii. From December 22nd at 7:00 PM through December 27th, when Petitioner's regular parenting time resumes (until December 29th at 7:00 PM).

4. Petitioner shall have reasonable parenting time with the minor child Ellen until her eighteenth birthday (on May 25, 2013) as she is willing; to be arranged directly with her through text messaging.

5. Respondent shall ensure that Brendon is ready and available to be picked up by Petitioner when his parenting time is set to begin.

6. The parents shall each encourage and facilitate a good relationship between the minor children and the other parent. The parents shall not make disparaging remarks about the other parent in the presence of the minor

3

13. Petitioner shall pay to Respondent the sum of $2,500 per month as and for spousal maintenance. These funds shall be deposited by Petitioner directly into Respondent's bank account (which was formerly the community account), on or before the first (1st) day of each month, beginning June 1st, 2013.

14. Petitioner shall be responsible for making at least the minimum monthly payments on the following credit cards:
    a. Discover
    b. BBVA Compass
    c. Capital One
    d. Bank of America (First)
    e. Bank of America (Second)

15. Respondent shall be responsible for making at least the minimum monthly payments on the following credit cards:
    a. Chase/AARP
    b. Target

16. Respondent is not awarded a temporary order for payment of attorney fees, as the Court does not find Petitioner has such resources available.

17. A Custody Evaluation is ordered through the Court of Conciliation. The parties shall comply with all reasonable requests of Mr. Sid Buckman to promptly effectuate such evaluation. See attached orders.

18. No other evaluations are ordered.


**IT IS ORDERED** denying any requested Temporary Orders relief sought before the date of this Order that is not expressly granted above.

**IT IS ORDERED** setting a **Status Conference on Monday, July 29, 2013 at 11:30 AM in Division 6.**

5

**IT IS ORDERED** signing this minute entry as a formal order of this Court pursuant to Rule 81, *Arizona Rules of Family Law Procedure.*

DATED: __5|21|13__

Ted S. Reed
Judge of the Superior Court
Division 6

cc.

Ms. Ellen Seaborne, Esq., Counsel for Petitioner *via* Courthouse Box

Mr. Dennis Harrison, Esq., Counsel for Respondent *via* Courthouse Box

6