

Denise Elaine Shay Downum, Party in Interest, Creditor/Co-Debtor
1807 W. University Heights Drive S.
Flagstaff, AZ 86005-9131
(928)773-0152
Email: Desd2000@aol.com

**FILED**

MAR 2 0 2015

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>**CHRISTIAN ERIC DOWNUM,**<br><br>Debtor. | **Chapter 13**<br><br>**Case No.: 3:13-bk-16930-RJH** |
| **DENISE E.S. DOWNUM,**<br><br>          **Movant**<br><br>v.<br><br>**CHRISTIAN DOWNUM,**<br><br>          **Respondent.** | **MOTION TO DISMISS FOR CAUSE (BAD FAITH) WITH PREJUDICE (Evidentiary Hearing Requested)** |

Movant and Interested Party, DENISE ELAINE SHAY DOWNUM, in proper person, moves this Court to dismiss Debtor's plan, with prejudice, pursuant to 11 USC 1307, on the grounds that the petition/plan was not filed in good faith. Denise Downum is Debtor's estranged spouse. At the time that Debtor filed his Chapter 13 petition, the parties were involved in an Arizona State Court divorce proceeding which is still pending. The grounds for this Motion are more particularly set out in the following Memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTS

#### a. The Marriage

Debtor Christian Downum and Party in Interest/Movant Denise Downum were married in December 1987. The parties acquired certain community property and certain community debt

during their 25 year marriage. They have two children in common, one of whom turned 18 in 2013 and the other who is still a minor.

Debtor Christian Downum is a tenured professor of Anthropology at Northern Arizona University. He earns annual income of between $130,000 and $135,000. He receives generous benefits including subsidized health insurance and contributions to his state retirement fund equivalent to 10.8 percent of his NAU salary.

Movant has been an at-home mother and homemaker for most of the time since their first child was born in 1995. While she received her law degree in 1986, she has not practiced law since giving birth to their daughter. She has had no significant source of outside income since the birth of their first child and had not had an active license to practice law since 1995, prior to the filing of this action. She worked as a paralegal in 2013 and 2014, but she lost that employment when her employer closed her practice in February 2014. Although she reactivated her license in 2014, she has been unable to find employment as an attorney or replacement employment as a paralegal and is now unemployed.

In 2013, the community debt consisted of two mortgages totaling $309,000 and credit cards totaling approximately $50,000. The community property consisted of the heavily mortgaged home worth approximately $325,000, two cars which had a combined value of less than $10,000, retirement plan savings, and the personal property within the marital home, including the sole and separate property of Movant Denise Downum and the community property of the long marriage, including their greatest community asset, a collection of antique military collectibles, which Debtor had purchased during the last fifteen years of the marriage. Much of the community debt, on credit cards and in the mortgages, stemmed directly from Debtor's purchases of these military antiques which greatly exceeded the couple's disposable income.

Both spouses have made a hobby of collecting things. Movant has been a life-long collector, has inherited many items of personal property, and has many items of her sole and

2

separate property in her home. Movant had a hobby of purchasing small decorative items from thrift shops and flea markets. She collects numerous categories of vintage items including such things as salt and pepper shakers, ceramic bowls, dolls, ornaments, kitchen utensils, figurines, and other small items of nominal value. She has decorated and furnished the marital/family home with these purchases, and has in the home many things she has sentimentally kept from her childhood, many things given her by her family and friends, and many things she has inherited, which are her sole and separate property.

For Debtor, the collections have been of military antiques particularly those from the WWII era. He has developed an expertise in military collectibles and has engaged in the business of buying and selling antiques. He claimed the income and expenses from his annual sales on his Schedule C to the joint tax returns. Until 2012 Movant personally prepared the parties' joint tax return obtaining the expense and sales information from Debtor in order to complete the Schedule C. Debtor's primary method of selling and buying the collectibles has been via the internet, using Ebay and various other auction sites.

Despite Debtor's sales, the number of items purchased by Debtor each year has significantly exceeded his sales, and the collection has grown to the point that it is housed in an 8 x 13 ft. store room connected to the garage of the marital residence. An additional portion of the collection takes up another 4 x 6 square feet in the garage proper. The collection is contained in cardboard boxes that completely fill the store room from wall to wall and floor to ceiling. The boxes are stuffed into the closet in no particular order and block all access into the room.

(Debtor testified in State Court that the military collection has a value of approximately $100,000 if he were permitted to sell it, but only $40,000 if it were sold to a dealer. Movant, who was the spouse primarily responsible for paying the community's bills estimates that Debtor spent close to $150,000 on the collection over the years, far more than they could afford without

the excessive use of credit cards and home equity credit. She believes that the collection is worth far more than Debtor's Family Court estimate, perhaps as much as $200,000.

Debtor spent more than 60 hours cataloging and estimating the value of most of the military collectibles under this Court's order in 2014. His estimate of the value of the collection exceeded $146,000. His list of items from the military collection he proposes to sell in order to repay community debt under his Plan totals some $81,000.)

### b. The Divorce

The divorce proceeding has been extremely contentious. Debtor is 58 years old and Movant is 57 years old. Movant has had medical problems over the past several years and has been stressed from Debtor's constant purchase of military collectibles on credit. Debtor left Movant to pursue a relationship with one of his students in August of 2012. Movant was emotionally devastated by Debtor's choice to continue his relationship with another woman and leave her after the 25 year marriage and 37 year relationship. Movant has remained in the family residence with the couple's two teen-aged children since that time. Debtor currently resides with his girlfriend and her children.

On one occasion during a tense and hostile confrontation between the two, during which Debtor physically assaulted Movant, Debtor threatened Movant and their daughter, "I'll cut you off financially, and there's not a thing you can do about it!"

From August 2012 until December 2012, Debtor continued to show up at the residence to take items from the military collection to sell for his own profit. He did not account for the items taken and did not advise Movant of what he took or what he sold. In December 2012, realizing that there was no prospect for reconciliation and that divorce was imminent, Movant decided that she was no longer going to allow him to take or dispose of the community owned military collection. During the month of December, 2012, Debtor withdrew the majority of the funds from the joint checking account and left Movant with insufficient funds to pay the mortgage or the bills.

4

Debtor Christian Downum filed a Petition for Dissolution of Marriage in the Coconino County Superior Court, State of Arizona, on January 3, 2013, requesting sole custody of the children, (against their will), stating that Movant should *not* receive any spousal support, asking for the residence and stating that the unsecured debt should be paid from the community property, and that he should be the one to sell it. He requested an *ex parte* restraining order. At that time Debtor was earning approximately $130,000 per year, and Denise Downum was unemployed.

Since filing, Debtor has maintained that he should have sole control over the sale of community property, that in addition to selling some of the military collection, Movant's collectibles should be sold to pay the community debt, that he should be paid his attorney's fees by Movant and that he should receive sole custody, the house should be sold or awarded to him and any equity should be used to pay the credit cards. He has relentlessly sought to have Movant "kicked to the curb" with no money, no assets, no children, no home and no support.

(Debtor has, to date, obligated himself in excess of $100,000 in attorney's fees in his effort to take everything from Movant, and he has repeatedly perjured himself in court proceedings. He has blamed Movant for this expenditure of fees in statements to the couple's children. Debtor's attorneys have continued to cooperate to represent him in this hugely expensive and fraudulent plan and to stoke his vindictive zeal, and their efforts now appear to be directed at ensuring he can pay them their fees by taking all property and most financial support from his estranged wife and their two children.)

On May 9 and 21, 2013, the State Court heard testimony from the parties regarding Debtor's motion for temporary orders. Despite his requests, on May 21, 2013, the Family Court ordered sole custody to Movant, that she be given exclusive possession of the residence, that she receive spousal maintenance of $2500 per month and $550 in child support. The Family Court also ordered that Debtor was to pay the minimum monthly payment on five of the seven community credit cards. Denise Downum was given temporary exclusive use of the marital

home and custody of the two teen-aged children (one of whom turned 18 years of age four days after the order). She and the two children have resided in the marital home continuously since then.

Denise Downum was ordered to temporarily pay the monthly mortgage payments on the marital home and to pay the minimum monthly payments on two community credit cards which she was primarily using. (Chase AARP Card, and Target card). The Family Court delayed making a ruling on the division of the personal property until the final trial of the dissolution but the Court also ordered that the parties could not sell any of the community property absent mutual agreement and if any property were sold, the proceeds should be split equally between them. In making its ruling, the Family Court had already made orders concerning the division of community property and debt which Debtor has made a part of the bankruptcy estate in his Plan. (It was upon this order of the State Court concerning property and debt that Movant based her prior Motion to Lift the Stay to this Court.)

On May 31, 2013, Debtor moved for an order from the Family Court reducing Denise Downum's spousal maintenance. Debtor claimed that he could not make the payments ordered. He asked the Court to reduce the support payments by $500 total and demanded that the Court order that the community property, including Movant's property, be sold to pay the credit cards. Debtor argued that he would be forced into bankruptcy if the Family Court did not reduce the award, claiming to have net monthly income of only $5600.

Based on his claim of impossibility, the Family Court modified the monthly spousal support by reducing it to $2000. The Court did not order the property sold and did not modify the order regarding payment of the unsecured debt.

Debtor made the payments on the credit cards he was ordered to pay by the Family Court for only two months, and then stopped paying as he prepared his bankruptcy action. As most of the credit card accounts were in Denise Downum's name, his default (and his bankruptcy) have ruined her credit rating.

Before Debtor filed for bankruptcy, Movant offered by letter to allow him to start selling the military collection to pay credit card debt and offered several alternatives to obtain a fair, unbiased assessment of the value of the military collection. Debtor's divorce attorney Ellen Seaborne did not even open the letter for two weeks. She only opened it after Movant's counsel made a follow up phone call to her on September 9, 2013. During that phone call, Movant's counsel asked Ms. Seaborne if Debtor intended to file for bankruptcy. Ms. Seaborne stated vaguely "I hear that it is imminent." After the conversation, Movant made a full settlement offer to Debtor which included giving him the entire military collection in return for him taking all the credit card debt and one half the second mortgage on the house, giving Movant the marital home, and agreement on an equitable division of the rest of the personal property. That offer was sent on September 13, 2013. On October 4, Movant's offer was flatly rejected by letter from Ms. Seaborne.

### c. The Bankruptcy – Bad Faith

Debtor filed bankruptcy on September 27, 2013. In his proposed plan his sworn statement was that his monthly income was more than $10,000, and that he expected to earn that amount of income for the period of his Plan. This was in stark contradiction to his statement to the Family Court of a few months before.

Debtor's Chapter 13 Plan called for $500 per month payments from his income, exactly the amount by which spousal maintenance was reduced based on his claim of poverty. In addition, his Plan was to sell the community property (which he has described as the sale of "his" collections) to pay the 5 credit cards listed as well as his divorce attorney's unpaid fees. He did not include in the schedules the two other credit cards that were obtained during the marriage and for which he is legally responsible under Arizona law. He did not include one of the credit card debts he was ordered to pay in the Family Court's Temporary Order.

His Plan made no distinction between his sole and separate debt and community debt. He did not differentiate amounts he borrowed against the credit cards that are sole and separate

debt from amounts that are community debt. Specifically, he did not advise this Court of a $5000 cash advance he took against one of the cards to retain his divorce attorney. [1]

He listed an "automobile loan" in his schedules that was actually obtained in May 2013 against an unencumbered community asset (Subaru) solely for the purpose of paying his divorce attorney. [2]

In his original Schedule B he identified the "military collection" as "Husband's" and only amended the schedule to designate the collection as community property when Movant raised the issue at the meeting of the creditors. He did not place any estimate of value on the military collection despite the fact that he personally valued it at approximately $100,000 during the hearing on the temporary orders.

At the same time, he placed a greatly inflated value of $40,000 on the "other collections" in the marital home, all the small items primarily purchased, given to, or previously owned by Movant, without any basis for making such an estimate of value, and without advising this Court that much of the personal property within the home is the sole and separate property of his wife and their two children.

His petition for bankruptcy was purposed on thwarting the Family Court's orders, taking the entire military collection as his own, and forcing the sale of all of the personal property within Movant's possession and home in order to pay the credit card debt *and* his attorney's fees. He has obviously intended through his bankruptcy plan that his wife be forced to pay the community debt, while he escaped the marriage with its greatest asset and was discharged from liability on all community debt.

---

[1] The hearing on temporary orders was originally scheduled for one day on May 9. It had to be continued to a second day on May 21. Debtor testified on the 9th, Movant testified on the 21st. Debtor obtained a secured loan against his unencumbered car (community property) on May 14. He testified at the Meeting of the Creditors that he used the funds, $4900, to pay his divorce attorney.

[2] In October 2013, after the parties separated, Debtor surreptitiously took a $5000 cash advance against the Capital One card obtained in Movant's name to retain a divorce attorney.

Movant was told by Debtor's bankruptcy attorney, Aubrey Thomas, in November 2013 that Debtor "thinks it's unfair that he has to sell his military collection to pay the debt, and you don't have to sell your collections." Ms. Thomas was fully advised by Movant and her counsel of Debtor's bad faith during this same conversation, and has continued to press his plan despite this knowledge, even claiming that his sworn statement that the community military collection was his sole and separate property was her own typographical error.

(Movant spent days in November 2013 inventorying her sole and separate property so that it could be affirmed by the Family Court as hers, and not subject to this Court's jurisdiction over the bankruptcy estate. She also inventoried and valued the community property in the marital home, aside from the military collection, and provided that inventory to Debtor. Debtor's counsel have objected without specificity to "the vast majority of the items" Movant listed as her sole and separate property, and to her valuation of the community property. Debtor's counsel made a special appearance in the Family Court to express this objection, again taking the matter out of the Family Court's power and keeping the issues of Movant's sole and separate property and the value of the community property in the home unsettled for purposes of his Plan. Despite repeated attempts to have his objections specified, Debtor has refused to so specify and is currently attempting to gain access through State Court order that he may enter Movant's home to inventory and value all the property within the residence. Movant believes this is purposed on a liquidation of all of the property within Movant's possession under a Chapter 7 conversion.)

Debtor has used his bankruptcy plan against Movant in the State Family Court. He has acted in bad faith, in a concerted effort to thwart and extinguish the power of the Family Court to make an equitable division of the marital property and debt. Debtor has taken advantage of the Family Court's admitted lack of knowledge of bankruptcy law to mislead that Court as to his plan and influence the Family Court to reduce Debtor's domestic support obligations. Through repeated petitions to the Family Court in 2014, Debtor has used his bankruptcy plan to attempt

9

to reduce Denise Downum's spousal maintenance. Debtor has misrepresented the terms of his plan to the Family Court, and has made sworn statements to that Court which are completely contrary to his sworn statements to this Court.

Some of the most telling pieces of evidence showing Debtor's lack of good faith are his Affidavits of Financial Information in the Family Court, which are completely contrary to his sworn statement of his income in this Court. In this case, Debtor first disclosed that his annual income was $122,208.84. (Form B22c, p. 2, l. 15) He used that income to determine his disposable income on both the Form B22c, and on his Schedules I and J. His plan payments of $500 ($200, and $1325) per month from *income* are based on this income statement. Yet in his "Updated Affidavit of Financial Information", prepared under oath on December 13, 2013 in the divorce court, he acknowledged that his income for 2013 would be more than $125,000 and that his monthly income was $9986 (which was *less than his claimed monthly income in his bankruptcy schedules)* but goes on to state that:

> "The monthly income indicated is **_inaccurate and misleading for purposes of documenting my future income._** My current employment contract is for a calendar year, but I have for the past 21 years opted to have this paid over a 9 month academic year. In the past I have relied on summer work in the form of contracts and summer school teaching to make ends meant when my paycheck stopped in mid-May. **_This is not feasible in the future_** because with budget cuts in the Federal government contracts have dried up, and summer school enrollments have dropped due to an increasing number of summer course offerings by NAU."

Debtor filed an additional Updated Affidavit of Finances in Family Court in December 2014, which declares that his monthly income will now be less than $7600. A copy of this Updated Affidavit of Finances was lodged with this Court as an Exhibit to Movant Denise Downum's Response to Debtor's Motion to Compel on March 13, 2015. Debtor used this greatly reduced figure to argue to the Family Court to reduce Movant's spousal maintenance award. He argued that he will, during the period of his bankruptcy plan and from now on, earn *no income* during the three summer months of every year, and so he has had his nine-month

contract salary of $90,000 spread over twelve months, and thereby deliberately reduced his income to less than $7600 per month.

Therefore, Debtor has stated under oath, that the very same information he provided to this Court is ***inaccurate and misleading.*** If this is true, then his current Plan is based on inaccurate and misleading information that he has provided to this Court. Clearly Debtor is willing to say whatever is expedient depending on the forum he is in.

A second divorce pleading provides additional evidence of Debtor's bad faith and inequitable motives in filing his bankruptcy Petition. In a response to Movant's Motion to Continue the Divorce Trial in order to allow this Court to make a decision on whether to lift the automatic stay, Debtor made the following statements:

> *"The Bankruptcy Court has taken control of the assets and debts. It is not going to give that up. That control provides guaranteed protections for the person filing for bankruptcy and the Respondent [Movant in this case] cannot go after the assets and debts in state court."*
> *"Petitioner [Debtor in this case] was forced to file for bankruptcy because the Respondent refused to allow him to be able to sell assets to support himself in addition to the financial obligations imposed upon him by this Court."*
> *"The Respondent fails to mention she is unwilling to allow the Bankruptcy Court to complete an inventory of the assets (just as she did in state court) thus requiring another unnecessary litigation delay in the Bankruptcy Court proceedings. The Bankruptcy Court WILL allow an inventory **and not under the Respondent's limited and restrictive conditions.**"*

Debtor included the mortgage on the marital residence as a debt in this action but stated that it will be paid directly outside bankruptcy. Debtor stated in his proposed plan that "Debtor will pay the mortgages outside of the plan". He failed to advise this Court that the mortgage was temporarily assigned to Movant and that she is paying that debt, although he too is legally responsible to the creditors for its payment. In actuality, Debtor has relied on Movant to make all payments to the mortgage companies during the entire period of time since she was temporarily ordered by the Family Court to do so on May 21, 2013. Movant has made all the monthly mortgage payments which have been made on the marital home. She has struggled to

make the mortgage payments since she lost her employment in February 2014, although she made nine payments in 2014.

In January 2014, Debtor and Movant went before the Family Court to try the issues of spousal maintenance, child support and custody of their teen-aged son. Following this trial but before he had received the Family Court's Order as to spousal maintenance, Debtor misrepresented to the Family Court in a pleading on February 18, 2014, that Denise Downum had no community debt because "(Debtor) makes the house payments under the bankruptcy."

On February 14, 2014, the Family Court awarded Denise Downum ongoing (for her lifetime or until her remarriage) spousal maintenance of $2500 per month. On May 1, 2014, the Family Court increased the award of spousal maintenance to $2750 per month.

Since that time, Debtor has attempted to reduce Movant's spousal maintenance award with three Petitions for Modification of Spousal Maintenance in Family Court. In all of these Petitions, Debtor attempted to force Denise Downum to make the mortgage payments, in violation of the co-debtor's stay. Debtor has argued to the Family Court that Movant's failure to make all mortgage payments during 2014, "placed Debtor's bankruptcy plan in jeopardy."

## II.    Stipulated Settlement Agreement – More Bad Faith

Movant Denise Downum objected to elements of Debtor's Plan and brought a Motion to Dismiss Debtor's Bankruptcy on the basis of bad faith on April 16, 2014. The matter was set for trial in June 2014. After much negotiation, a Stipulation and Agreement was entered into on June 9, 2014, upon which this Court's Stipulated Order Approving First Amended Chapter 13 Plan was based. A primary component of the Stipulation was that Debtor's conversion to a Chapter 7 Plan would make the agreement null and void. The Settlement Stipulation executed by Debtor on June 6, 2014, specifically states that conversion of his plan to a Chapter 7 plan voids the Stipulation.

Movant agreed to settle her objections and her Motion to Dismiss for Bad Faith on the express understanding that Debtor's plan would include only the sale of the community military

collectibles listed in his Approved List of Property for Sale. It was expressly contracted that the remainder of the community military collection and all other community property would be apportioned by the Family Court after this Court entered an Order lifting the stay of jurisdiction over the remainder of the community property and debt.

On September 12, 2014, while the second of Debtor's Petitions for Modification of Spousal Maintenance was pending, Debtor's counsel Aubrey Thomas made an appearance in the Family Court to advise the Court that this Court's Order Approving Debtor's Plan would likely not be entered for sixty to ninety days. Ms. Thomas vouched for Debtor's dire financial circumstances, exceeding the bounds of her appearance. Debtor's counsel both argued to the Family Court that Debtor's financial circumstances were extremely dire, though Debtor was earning more income than he had ever earned before in 2014, some $135,000 (to which he testified in Family Court on February 3, 2015.) Ms. Thomas raised to the Court the threat that Debtor was considering the possibility that he might convert his Chapter 13 plan to a Chapter 7 plan, because of his dire financial circumstances.

On September 12, 2014, Denise Downum lost her counsel in Family Court due to her inability to pay her for her services. Attorney Wendy White remained on as her counsel in this Court in order to see this Court's Order Approving Debtor's Plan according to the Settlement Stipulation between Debtor and Denise Downum. Ms. White then moved to withdraw from the matter and has provided no further assistance to Movant.

On December 16, 2014, this Court entered its Stipulated Order Approving First Amended Chapter 13 Plan. On January 23, 2015, Denise Downum filed this Court's Order in the Family Law Court, believing that the Order returned jurisdiction to the State Court over the non-plan property of the Parties, including the marital home and the remainder of the military collection and all other personal property. The Family Court has set a two day trial of the property and debt issues for a final dissolution decree on April 29 and 30, 2015. It is now

uncertain that this Court has, in fact, returned jurisdiction over any of the property of the bankruptcy estate to the State Family Court.

### e. Bad Faith Use of Bankruptcy Plan in Family Court

Debtor has proceeded to file in Family Court a Motion for Access to the marital home, ostensibly for the purpose of inventorying and valuing the property within the home for the State Court's equitable division in the April trial. It appears to Movant that this Family Court motion is not for the purpose of discovery for that Court's orders, but rather is purposed on valuing the property for sale under a planned conversion of Debtor's Chapter 13 plan to a Chapter 7 plan. Debtor's attorneys have both indicated to Movant that this is Debtor's intention. This Court denied Debtor access to the personal property within the marital home, so Debtor is fraudulently seeking this access through the State Court.

On February 3, 2015, the Family Court held an evidentiary hearing on the most recent of Debtor's Petitions for Modification of Spousal Maintenance. At this hearing, Debtor presented testimony to the Family Court 1) which violated the provisions of the Settlement Stipulation, 2) which misrepresented the terms of Debtor's bankruptcy plan to the Family Court judge, 3) which threatened to completely void the Settlement Stipulation with a conversion of Debtor's Chapter 13 plan to a Chapter 7 plan, which Debtor deliberately mischaracterized as being "required", if the Family Court did not reduce Denise Downum's spousal maintenance award, and 4) which represented to the Family Court that Debtor's sworn testimony in this Court that his monthly income will exceed $10,000 for the period of the plan was not true, but that his actual monthly income from now on will be only approximately $7600.

Specifically, Debtor first testified that Movant's objections to his plan had caused him "to have to spend $22,000 in attorney's fees, instead of the usual $4000 cost of a bankruptcy." This was testimony intended to persuade the Family Court to reduce Denise Downum's spousal maintenance in order to reimburse Debtor for his attorney's fees in the bankruptcy matter. The Settlement Stipulation expressly forbids this testimony and states:

14

**21. Each party shall be responsible for payment of their own attorneys' fees and costs in this matter. Both parties waive the right to seek reimbursement in Family Court of their attorneys' fees and costs expended in this matter.**

Second, Debtor falsely testified that his monthly payments to the U.S. Bankruptcy Trustee were payments of the community debt, and that he was paying off the community credit card debt from his income on Denise Downum's behalf. Debtor's plan requires the sale of community property to pay the community credit card debt. Debtor's monthly payments are for the repayment of his sole and separate debt. Debtor falsely testified that his monthly payments were *not discretionary* and that he, rather than Denise Downum, was paying community debts from his earned income. In his written Closing Arguments Re: Petition for Modification of Spousal Maintenance, filed with the Family Court on February 13, 2015, Debtor falsely states:

> *Petitioner also pays $200 a month to the bankruptcy trustee, (he was previously paying $500 a month to the BK Trustee, however when this Court upped the spousal support amount to $2500/month it crippled his ability to be financially sustainable), and (sic) amount that will increase to $1325 on Oct. 1, 2015 for 35 more months.* ***These payments are paying off the community debts of the parties.*** *The payment to the BK trustee should also be considered non-discretionary in that default will bring about a Chapter 7 and the parties would essentially lose their assets. Respondent has no such obligation and has been relieved of considerable responsibility for community debts; however if this goes into a Chapter 7 she, the Petitioner, and the community, will be in dire financial straits. The Court should seriously consider this circumstance.*

(The Court should note that this Closing Argument was filed on February 13, 2015, after Movant Denise Downum had advised both Debtor's bankruptcy counsel, Ms. Thomas, and his Family Law counsel, Ms. Seaborne, that Debtor had given false testimony, in violation of the Settlement Stipulation in an email on February 5, 2015.)

Third, Debtor falsely testified to the Family Court that if Movant's spousal maintenance award was not reduced, he would be *required* to convert his plan to a Chapter 7 bankruptcy plan. This statement clearly was intended to persuade the Family Court that this Court, the U.S. Bankruptcy Court, would require that Debtor's Plan be converted to a Chapter 7 plan. The statement, "*The payment to the BK trustee should also be considered non-discretionary in that default will bring about a Chapter 7 and the parties would essentially lose their assets.*

Respondent has no such obligation and has been relieved of considerable responsibility for community debts; however if this goes into a Chapter 7 she, the Petitioner, and the community, will be in dire financial straits", misrepresents to the Family Court that Debtor's discretionary choice to convert would not be discretionary, and that Denise Downum would be forced to accept his Chapter 7 conversion, without objection.

In fact, the Settlement Stipulation settling Denise Downum's objections to Debtor's proposed plan clearly states that a Chapter 7 conversion will *void* the Settlement Stipulation:

> 24. **If Debtor's case is converted or dismissed, this Stipulation shall become null and void** *except that, the terms of this Stipulation that set forth the community debt and the sole and separate debt of Debtor shall survive any voluntary or involuntary dismissal or conversion of this case and may be enforced in any State Court by either party to the extent allowed by law.*

Fourth, Debtor represented to the Family Court that his monthly income was currently $7600 in a sworn Affidavit of Finances. This is a complete contradiction of his bankruptcy plan in which he has sworn that his monthly income for the period of the plan will be at least $10,000. His testimony on February 3, 2015 in the Family Court was that his gross earnings were $135,000 in 2014, or more than $11,000 per month. But Debtor argued to the Family Court that his net income should be used in determining Denise Downum's spousal maintenance, (a misstatement of Arizona law), and that he will be unable to earn more than his salaried income of $90,000 from now on. This is completely inconsistent with his bankruptcy plan.

Debtor deliberately misrepresented the terms of his bankruptcy plan and the Settlement Stipulation to the Family Court in order to accomplish his goal of reducing Movant's *spousal maintenance. Debtor was successful and Denise Downum has suffered damages.*

On February 5, 2015, Denise Downum sent an email expressing her fears that she would be disadvantaged by the Family Court's Order to both Debtor's attorneys:

> *I believe that Chris has clearly violated the stipulation that he not seek reimbursement in Family Court of his attorney's fees and costs expended in his bankruptcy, by attempting to have our judge reduce the award of spousal maintenance. I believe the bankruptcy court would agree that he has breached our contract before he even took possession of the community property for sale. If you*

16

*file a motion to compel, I will file a response seeking to have the stipulation set aside. I will argue that the stipulation has been breached and should be voided, and I will point to my prior motion to dismiss for bad faith, which our bk judge seemed amazed I had agreed to settle. (I did NOT refer to my attorney's fees in the bankruptcy matter during the evidentiary hearing on Tuesday. I testified that my objection to the bankruptcy was necessary to prevent Chris from claiming the entire military collection as his own sole and separate property.)*

On February 11, 2015, Ms. Downum expressed her position in an email to Debtor's counsel, lodged with the Court as Exhibit A to Denise Downum's Response to Debtor's Motion to Compel Access on March 13, 2015.

On February 27, 2015, the Family Court ordered that Denise Downum's spousal maintenance be reduced from $2750 per month for her lifetime, or until she remarried, to just $1200 per month, to terminate after 72 months. The Family Court erroneously found that Debtor's expenses included the repayment of community debt from his income. The Order states:

> ***Petitioner's remaining minimum monthly reasonable expenses add up to approximately $2,816 per month, not including any monthly savings for upcoming necessary dental procedures, but including $200 per month for payments made on community debt to the bankruptcy trustee, (though this amount will increase to $1325 on October of 2015). After meeting his reasonable needs and the required payment to the bankruptcy trustee, Petitioner has $1272 left over to help meet Respondent's needs.***

The Family Court reduced Movant's spousal maintenance because Debtor convinced the Court that his monthly payments to the trustee were for the repayment of community debt. Movant's spousal maintenance was reduced by $1550 per month because of Debtor's false testimony and argument to the Family Court. She now is completely unable to make the monthly payments on the first mortgage on the marital home of $1671 per month and the second mortgage of approximately (variable) $270 per month.

This Court's Stipulated Order Approving First Amended Chapter 13 Plan (Doc 97) states that:

> ***b. Claims Secured Solely by Security Interest in Real Property.***

**Debtor's nonfiling spouse, Denise Downum, or Debtor will pay all post-petition mortgage payments, if any, directly to the secured creditor entitled to receive such payments.**

The Family Court, while recognizing that Denise Downum had paid the mortgage payments on

the marital home thus far, stated:

> **However, as both parties are legally liable for such obligation and have a joint interest in preserving the equity in the community residence, it would seem clear that the parties should reach some further temporary agreements as to payment of that community debt. Further, it would seem clear that the parties should seriously consider placing the marital residence on the market as soon as possible. At Page 7.**

Following the Family Court's Order, **both** of Debtor's attorneys stated to Movant that

Debtor was unwilling and unable to contribute to the payment of the community mortgage, and

that the marital home, where Denise Downum and the couple's two children reside would need

to be put up for sale. On March 5, Movant sent an email to Debtor's Family law attorney, Ms.

Seaborne:

*As to the Court's Orders of last week that we need to figure out a way to pay the mortgages, I would like to know what Chris' intention is. I cannot continue to pay even the first mortgage on $1200 per month. Chris' bankruptcy plan depends on me paying the mortgage. The Court notes that it is a community obligation. I have heard nothing from you about this.*

Debtor's Family Law attorney replied*:*

*As you know Chris cannot make the mortgage payments. You have all the financial information. If child support is increased, then the hole is dug even deeper. It is time to put the home on the market and sell ALL THE COLLECTIONS AND ANTIQUES. You have got to downsize. We've been advocating this from the beginning. You lived beyond your means for many years during the marriage. You contributed to that considerably. You continue to live beyond your means. It is time to get practical—again something we've been advocating since the beginning.*

On March 5, Denise Downum sent an email to Debtor's bankruptcy attorney:

*As to your motion to compel, we have an additional problem. Because you, Chris and Ellen Seaborne succeeded in convincing Judge Reed that Chris is paying for community debt from his monthly payments, and that he may be forced to convert to Chapter 7 bankruptcy (which would void our stipulation), he has reduced my spousal support to $1200 per month. Obviously, I cannot pay the mortgage, as the bankruptcy plan depends upon.*
*What do you propose? Do you not agree with me that the bankruptcy court should be informed of this at the hearing on March 13? Your client has a community obligation to pay the mortgages.*

Debtor's bankruptcy attorney replied:

*I am not in a position to comment on Judge Reed's order. Although I disagree with your characterization, I think the order speaks for itself. That said, I do not agree that issues regarding the house are appropriate to bring up at the hearing on the 13th. This is not a status hearing on the entire case. It is just a hearing on the motion to compel. The only issue raised is whether you are required to grant my client access to sell the items that you both agreed to sell to pay community debts. No other issues are properly before the court at this time.*

*However, I agree that, if you can't afford to pay the mortgage, we have an issue. Ultimately, the secured creditor will request relief from the stay to begin foreclosure proceedings. From my perspective, the only viable response would be to request that the Court keep the stay in place and give you and Chris time to sell the house to preserve the equity that is there. I want to be clear that I am not advising you to do so. I recommend that you seek counsel to discuss how to proceed with the house. Still, I have no problem with disclosing to you at this point in time that, if a motion for relief is brought by the secured creditor, requesting permission to sell the house will be my response on behalf of Chris.*

*One potential option, and I have mentioned this option to Chris already, is that you may apply for a home loan modification. If you are interested in doing that, both you and Chris would need to submit documentation directly to Seterus for that process. I would sign any authorization form required by Seterus to allow you and Chris to work directly with the bank to complete that application process.*

***Last, Chris has no obligation to pay the mortgage. His personal liability for the mortgage will be discharged after he successfully completes his plan.*** *If you do not make the payments and he does not want to lose the house to foreclosure, then yes, he would need to make those payments. However, he is not legally compelled to do so.*

*I cannot advise you on the best course of action, and I appreciate your desire to maintain the home. However, Chris is not in a position to pay the mortgage and, from your email, it does not appear that you are either. At this time, the only course of action that Chris is willing to consider is listing the property for sale. On that matter, I will note that you could structure the sale so that all proceeds remained in escrow until the family court decides how to divide them. That way the funds wouldn't go into the hands of either party until Judge Reed decides an equitable division on the assets. If you are willing to discuss selling the house, let me know.*

Ms. Thomas later emailed Denise Downum that Debtor was willing to cooperate with a loan modification.

Debtor's attorney's statement that Debtor has no obligation to pay the mortgage is a complete contradiction to the Family Court's jurisdiction and order that "both parties are legally liable for such obligation". In effect, Debtor has taken the position that the Family Court has no jurisdiction over the mortgage debt or marital home and other property. Debtor's Attorney Aubrey Thomas also stated to Movant in a phone conversation on March 12, 2015 that Debtor could in the future convert to a Chapter 7 bankruptcy plan and all of the community's property would again be subject to this Court's jurisdiction, despite Movant's understanding that her settlement meant that the property not listed in Debtor's Approved List of Property for Sale had

19

*already* been returned to the Family Court's jurisdiction for equitable division. Ms. Thomas belittled Movant, saying, "I can't believe you have not been advised of this most basic bankruptcy law". When Movant attempted to ask her to clarify her statement, Ms. Thomas said the conversation was "absurd" and ended it.

Yet, Ms. Thomas had negotiated the Settlement Stipulation and Agreement with Movant's counsel with the express understanding that the remainder of the property and debt would be divided by the Family Court, as is evidenced by emails between the two. This Court's Stipulated Order Approving First Amended Chapter 13 Plan and Application for Payment of Administrative Expenses of December 16, 2014 also states:

**EFFECTIVE DATE AND VESTING**. The effective date of the Plan shall be the date of this order. Property of the bankruptcy estate shall be determined as of the date of this Order. All property of the bankruptcy estate vests in Debtor and his non-filing spouse, Denise Downum, herewith, except for the property identified in the First Amended Plan, specifically, the property that is subject to sale pursuant to the Motion to Approve List of Items for Sale and Method of Sale (docket #68), in accordance with the settlement agreement (docket#74) and the Order granting the Motion to Approve List of Items for Sale and Method of Sale (docket #88). The automatic stay is hereby lifted as to all property that vests in Debtor and his non-filing spouse, Denise Downum.

Debtor's current position flies in the face of both courts' orders regarding the non-plan property and illustrates that his counsel was not negotiating in good faith with Movant's counsel. Movant has advised the Family Court that this Court's December 16, 2014 Order lifted the stay, and the Family Court intends to try the property and debt issues in late April and enter a decree of dissolution. Movant is at a loss to understand how Debtor can argue that any conversion of his plan to Chapter 7 in the future would bind Movant and all property and debt divided by the State Court. If this is true, Movant and her counsel have been hoodwinked by Debtor's counsel.

### III.  ARGUMENT

Now, Debtor seeks to compel Movant Denise Downum to give him access to the community property valued at $81,000 for sale under his plan, even as he threatens this

conversion and voiding of the Stipulation upon which his Plan was based and approved. Debtor has argued to this Court that Movant has no remedies under the Stipulation other than enforcement of the Stipulation. If Debtor can now convert his plan to Chapter 7 and take all community property within the marital home from Movant for liquidation, and also deny any legal obligation to pay the mortgages on the marital home, the Family Court has no jurisdiction, and Movant's counsel was completely taken in by Debtor's counsel. The Settlement Stipulation is an illusory contract and the evidence of Debtor's and his attorney's actions in bad faith must invalidate his bankruptcy.

The "basic purpose and spirit of Chapter 13 is rehabilitation and repayment of debt by periodic payments made to a trustee under bankruptcy court protection, with the aim of providing honest, unfortunate and genuinely financially distressed debtors an opportunity to obtain a fresh start, 11 U.S.C. §1301" *In re Waldron*, 785 F.2d 936 (11th Cir.1986)

11 USC §1307 allows an interested party to move for dismissal of a Chapter 13 petition for bankruptcy for cause. A motion to dismiss is a contested proceeding but it is not an adversary proceeding. It may be granted upon a finding of cause, either with or without prejudice. An alternative to outright dismissal is the conversion of a chapter 13 into a chapter 7 case. Movant is not requesting conversion but rather dismissal with prejudice.

"Although not specifically listed, bad faith is a `cause' for dismissal under §1307(c)." *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir.1999). "In deciding whether to dismiss a Chapter 13 case for bad faith, the Court applies a "totality of the circumstances" test." *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir.1999); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994). "In applying the test for dismissal with prejudice, *Leavitt* directs the bankruptcy court to a variety of factors to consider:

> (1) whether the debtor "misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner," *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994) (citing *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir.1982));

(2) "the debtor\'s history of filings and dismissals," Id. (citing *In re Nash*, 765 F.2d 1410, 1415 (9th Cir.1985));
(3) whether "the debtor only intended to defeat state court litigation," Id. (citing *In re Chinichian*, 784 F.2d 1440, 1445-46 (9th Cir.1986)); and
(4) whether egregious behavior is present, *In re Tomlin*, 105 F.3d 933, 937 (4th Cir.1997); *In re Bradley*, 38 B.R. 425, 432 (Bankr.C.D.Cal.1984).
*Leavitt*, 171 F.3d at 1224."

*In re Covino*, 245 BR 162, 169 (ID, 2000).

In pursuing the protection of bankruptcy a debtor "has to answer questions, has to be honest, forthcoming, truthful, and frank." *In re Alt*, 305 F.3d 413 (6th Cir. 2002). In determining whether a petition is filed in good faith, the Court considers both pre- and post-petition conduct and behavior. *In re McGovern*, 297 BR 650 (S.D. Fla, 2003). The determination of good or bad faith is a fact intensive, case by case analysis.

Bad faith has been found in the following cases resulting in the dismissal of the petitions. *In re Mountcastle*, 68 BR 305 (M.D.Fla, 1986)(Bad faith found where case involved nothing more than a 2 party dispute pending in State court); *In re Burger*, 254 BR 692 (D. OH 2000) (Bad faith shown where debtor's sole purpose in filing for bankruptcy was to stop a sheriff's sale of horses scheduled under state law); *In re Torvik*, 293 BR 795 (M.D.Fla 2003) (Systematic manipulation of the system warranted dismissal for bad faith); *In re Brock*, 365 BR 201 (Kan., 2007) (Bad faith found where major unsecured creditor was debtor's ex-wife who obtained a judgment in state court for slander and libel; interestingly, debtor accused the ex-wife of spreading lies about him that prevented him from obtaining employment but in fact the truth was the reverse); *In re Myers*, 491 F. 3d 120 (3rd Cir, 2007) (Factors bankruptcy court can consider include "the nature of the debt . . .; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." Bad faith exists "where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose."); *In re Uzaldin* 418 BR 166 (E.D. Va., 2009 ) ("where a debtor seeks to misuse the Bankruptcy Code to

hinder or prejudice one particular creditor and where the underlying debt could be non-dischargeable" a finding of bad faith may be appropriate; debtor sought to avoid state court obligations to his ex-wife through Chapter 13); *In re Shead*, 59 CBC2d 1074, [Civil Action H-08-1386] (Bankr. S.D. Tex., 2008) (Bad faith found where debtor's clear purpose in filing was to squeeze out partner and take sole control of partnership assets); *In re Ellis*, 406 BR 736 (E.D. Va, 2009 ) (Bad faith found where only reason for filing was to frustrate ex-husband's claim arising out of divorce decree and avoid paying him although she could have done so); *In re Hopper*, 474 BR 872 (E.D. Ark,2012) (bad faith where the only significant debts were to ex-wife; court stated "[B]ankruptcy court authority should not be exercised when it is clear that the bankruptcy action is merely a continuation of a previously litigated dispute between divorced spouses. "The Debtor's obvious intent is to use this bankruptcy proceeding, not only as a shield against his creditors, but also as a sword against his wife." *In re Dryja*, 425 B.R. 608 (Bankr.Colo., 2010). (In which the Debtor Husband, as here, filed for bankruptcy while the divorce was pending. His schedule of assets and debts were incomplete, and dishonest. The Court stated "Undoubtedly this plan is premised on a belief that the Debtor can keep all the assets and leave his non-filing spouse with all the debts." Id.)

A bankruptcy court should not put itself in a position where its purpose is to second guess a previous decision of a domestic relations court. *A debtor who seeks reexamination of an issue previously considered by a state domestic relations court is acting with improper motivation.* Such an action violates the spirit of the Bankruptcy Code and should not be permitted." Citing *In re Griffith*, 203 B.R. 422, 425 (N.D.Ohio 1996); *In re Lehr,* 479 B.R. 90 (Bankr. N.D. Cal., 2012).

In *Lehr*, the Chapter 13 debtor sought to avoid a state court judgment obtained against her by her former husband for payment of $182,000 upon the post-dissolution sale of certain real estate. Included in the many facts considered by the Court was her failure to disclose that she had personal property stored in two rental units and that when she did disclose that fact,

she placed nominal value on the property and did not fully disclose the contents. Also considered was the fact that she failed to disclose as an asset a prepaid security deposit on her leased premises, had filed a homestead exemption on property that the evidence showed she was not living in and had sold a valuable Porsche to a friend for pennies on the dollar.

As in _Lehr_, only the second _Leavitt_ factor is inapposite in this case; Debtor does not have a history of filing bankruptcy petitions. And as in _Lehr_, the other three factors weigh heavily against Debtor. Debtor has made material omissions and misstatements in his petition and schedule including failure to include all debts, failure to distinguish his sole and separate debts, failure to give any estimate of the value of "his" military collection, giving an unsupported and overstated valuation to Movant's "other collections", failure to include all marital debt in the schedules, his conflicting statements regarding his income and expenses, utilization of the allowances for a two person household when he was only a one person household in his Form B22c, his statement that the mortgages will be paid directly outside of bankruptcy but failure to identify that those payments are being made by Movant, **his statement under oath in divorce court that the income figures he provided to this court are inaccurate and misleading** as well as his absolute insistence that he, and he alone, have complete control over the timing and extent of the sale of any personal property that belongs to the marital community all make it clear that his intent is to use the bankruptcy process to "second guess a previous decision of a state court", squeeze out Movant from her property interests, use the back door to force her to take over more debt, force her to pay his attorney's fees through sale of marital assets and take sole control over the parties' community property without having to turn over movant's equitable share. As in _Lehr_, "[t]his case has been replete with omissions and misstatements coupled with suspicious timing and elusive explanations."

In this case, it is Debtor's desire to prevent his wife from receiving any share in what he believes to be "his" Military Collection which has compelled him to file for bankruptcy. By originally claiming that the value of the collection is unknown, he attempted to ensure that the

property will not be liquidated, either to pay unsecured debtors or to turn over wife's share of the property to her. Ascribing an "unknown" value to the "military collection" was deceptive and designed to prevent this Court from making a valid analysis under Section 1325. Claiming that the value of the "Other collections" is $40,000 was also deceptive. Many of the items in the "other collections" are the sole and separate property of Movant, not community property. The value of the community property in furnishings and the "other collections" is likely worth less than $10,000, and has limited resale capacity.

Debtor was ordered by the State Court to make at least minimum monthly payments on five of seven credit cards. Instead of making the payments as ordered Debtor filed this bankruptcy action in an attempt to force the sale, under his sole control, of the parties' community property to pay the credit card debt. Debtor is using this Court to thwart the jurisdiction of the State Court, vindictively force Movant to sell property of little monetary value but great sentimental value, maintain sole control over "his" military collection and prevent Movant from obtaining her equitable share of the community property in the divorce proceedings. The bankruptcy process should not be used for such an improper purpose.

In addition, Debtor has caused Movant to suffer great financial damages as a result of his misrepresentation of his bankruptcy plan in the Arizona State Family Law Court, has violated the Stipulation for his own advantage and to Ms. Downum's detriment, and has anticipatorily breached the Stipulation with threats in the Family Court that he may convert his Chapter 13 plan to a Chapter 7 plan, which would void the Stipulation under its own express terms.

In short, Debtor has used his bankruptcy plan in the Family Court as a weapon against his estranged wife in order to drastically reduce the support award given her by the Family Court. Debtor has fraudulently misrepresented the terms of his bankruptcy plan to the Family Court in order to effect this reduction. Debtor has violated the term of the Settlement Stipulation that he not seek reimbursement of his bankruptcy attorney's fees in the Family Court. **Debtor has misstated his monthly income in sworn statements to the Family Court, compared to**

**his US Bankruptcy Court sworn statement of income upon which his plan is based.**
Furthermore, Debtor has repeatedly threatened that he will convert his Chapter 13 plan to a
Chapter 7 plan, in anticipatory breach of the Stipulation. Debtor has placed Movant in great fear
that he will breach their Settlement Stipulation by conversion to Chapter 7, and that she will be
divested of her share of the community's property. He used this threat in the Family Court to
persuade the Court to reduce Ms. Downum's spousal support.

Debtor has directly caused Denise Downum to lose her ability to continue to live in the
marital home with the couple's children. Through dishonest testimony in the Family Court as to
the bankruptcy plan and law, Debtor has violated the Settlement Stipulation for his own financial
benefit, in direct contravention of public policy and the U.S. Bankruptcy Code's priority payment
of court-ordered domestic obligations. Debtor refuses to make payment on the community
mortgage, and has succeeded in having Movant's spousal maintenance reduced so drastically
she is unable to make the payments on the home in which she and their two children reside.
Debtor's plan and his misrepresentations to the Family Court are resulting in the homelessness
of his estranged wife and children, and are an abuse of the U.S. Bankruptcy Code, which places
greatest priority on domestic obligations. This Court should not allow this to happen. Debtor's
actions in bad faith invalidate his bankruptcy plan.

## IV. CONCLUSION

Debtor has filed his Petition and Plan for Bankruptcy in bad faith. He has used his
bankruptcy against his estranged wife in State Family Court. He has gone back and forth
between forums to manipulate each court with the other court's rulings, while fraudulently
denying concerted action between his attorneys. He has given grossly inconsistent sworn
testimony as to his income to each court. This Court should not condone that behavior.
Debtor's actions against Movant are so egregious and destructive of her life that he has forced
her to bring this Motion. Debtor's bankruptcy should be dismissed with prejudice and Movant

should be awarded her attorney's fees as a sanction and compensation for having to defend against this bankruptcy action. Movant submits that there is more than enough evidence, even without a hearing, that Debtor's motives and intent in filing this bankruptcy and using this bankruptcy in State Court have not been in good faith.

Movant wishes to advise the Court that an evidentiary hearing held outside of Flagstaff would be a great hardship for her, as would the requirement that she pay for the preparation of transcripts of Debtor's testimony in Family Court on February 3, 2015. Movant wishes to offer her sworn testimony to this Court, and has sworn in the attached Verification/Affidavit that her assertions in this Motion are true to the best of her knowledge and belief.

Wherefore, Movant moves this Court for an order dismissing Debtor's bankruptcy plan with prejudice and awarding Movant her attorney's fees expended in this matter.


Dated: March 19, 2015.



_Denise Elaine Shay Downum_
Denise Elaine Shay Downum, Movant

Copies of this Motion to Dismiss have been served on the following by deposit in the United States Mail this _19th_ day of March, 2015:

Debtor's Attorney:

Aubrey Laine Thomas
Davis Miles McGuire Gardner, PLLC
320 N. Leroux Street, Suite A
Flagstaff, AZ 86001

United States Bankruptcy Trustee:
Edward J. Maney
101 N. First Ave., Suite 1775
Phoenix, AZ 85003

**VERIFICATION**

STATE OF ARIZONA            )

                                  ) ss.

COUNTY OF COCONINO      )

     I, Denise Elaine Shay Downum, Interested Party and Movant in this matter, being first duly sworn, upon my oath, depose and say that I have written the Motion to Dismiss attached hereto and know the contents thereof, and that the statements contained therein are true to the best of my knowledge, information and belief.

*Denise Elaine Shay Downum*

Denise Elaine Shay Downum

     SUBSCRIBED AND SWORN to before me this 19 day of March, 2015.

*Michelle Weldon*

Notary Public

My commission expires: 03/09/2017



MICHELLE WELDON
Notary Public - State of Arizona
COCONINO COUNTY
My Commission Expires
March 9, 2017